UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|                                         |                          |
|-----------------------------------------|--------------------------|
| TRIAD GROUP, INC.,                      |                          |
|                          Plaintiff,     |                          |
| v.                                      | Case No. 11-CV-766-JPS   |
| VI-JON, INC.,                           |                          |
|                          Defendant.     | ORDER                    |

On August 12, 2011, defendant Vi-Jon, Inc. ("Vi-Jon"), removed this action from state court on the basis of diversity jurisdiction. (Docket #1). Simultaneously, Vi-Jon filed a motion to dismiss the claims of plaintiff Triad Group, Inc. ("Triad"). (Docket #4). The Court denied Vi-Jon's motion in part. (Docket #12 (denying Vi-Jon's motion to dismiss Triad's first and second claims, but granting Vi-Jon's motion with respect to Triad's third claim)). Vi-Jon then filed its answer, alleging counterclaims against Triad. (Docket #13). Triad, in turn, filed a motion to dismiss those counterclaims (Docket #14), which the Court denied (Docket #18), allowing Vi-Jon to amend its answer to avoid dismissal (Docket #19).

Now, Triad again moves this Court to dismiss Vi-Jon's counterclaims, this time raising new arguments under Wisconsin's economic loss doctrine. (Docket #24). From the outset, the Court notes that it is unclear why Triad failed to raise this issue in its first motion to dismiss; little changed in Vi-Jon's pleadings between their first Answer (Docket #13) and their Amended Answer (Docket#19), so the Court is unsure why it should yet again evaluate that claim for dismissal—it seems that Triad simply wants a second bite at the apple. But, no matter how it may displease the Court to evaluate a second

motion to dismiss what is practically the same claim, the arguments against which could have been made in the first motion to dismiss, the Court dutifully turns to its task. And, evaluating the merits of Triad's newest motion, the Court determines that such motion should be denied, allowing Vi-Jon's counterclaim to stand.

1. BACKGROUND

Given that this is the third motion to dismiss addressed by the Court in this case, the Court provides an abbreviated rendition of the factual and procedural history of this case. A more detailed description can be gleaned from reading the Court's prior orders. (Docket #12, #18).

1.1 Factual History

Vi-Jon and Triad have had an ongoing business relationship for several years, in which Vi-Jon has contracted with Triad for the production of healthcare products. (Compl. ¶ 7). Under the typical transaction between the two businesses, Vi-Jon provided raw materials to Triad, along with a forecast of how much product would be needed; Triad, in turn, purchased further materials, and then manufactured the product. (Compl. ¶¶ 8–10).

The parties entered such a transaction again in 2011, but encountered a speedbump when the U.S. Marshal Service seized a number of products (including some products used in manufacturing Vi-Jon's products) from Triad's facilities due to contamination concerns. (Compl. ¶¶ 10,13,15,19–22). Thereafter, Vi-Jon instructed Triad to cease the production of Triad's products and also stopped paying Triad; this left Vi-Jon owing a substantial amount on their contract with Triad. (Compl. ¶¶ 23–27, 31).

Thus, Triad instituted this action, seeking amounts owing on their contract, under breach of contract and promissory estoppel theories. (*See* Compl. ¶¶ 28–44).

1.2     Procedural History

Vi-Jon removed this action to this Court from state court, on the basis of diversity, and simultaneously filed a motion to dismiss. (Docket #1, #4). The Court granted that motion in part and denied it in part. (Docket #12). Shortly thereafter, Vi-Jon filed an answer, incorporating counter-claims for breach of contract, breach of warranty, and fraudulent inducement to contract. (Ans. ¶¶ 104–130). Triad moved to dismiss those counter-claims. (Docket #14). The Court denied their motion, allowing Vi-Jon to amend its answer. (Docket #18).

After Vi-Jon amended its answer (Docket #19), Triad moved to dismiss Vi-Jon's amended fraudulent inducement counterclaim. (Docket #24). That motion to dismiss the fraudulent inducement counterclaim is now before the Court, having been fully briefed by the parties. (Docket #25, #26, #27).

2.      STANDARD OF REVIEW

To survive a motion to dismiss, a pleading must contain a short and plain statement of facts that establish that the party pleading those facts is entitled to relief under his or her claim. Fed. R. Civ. P. 8(a)(2). In evaluating pleadings challenged by a motion to dismiss, the Court must accept the factual allegations in the pleading as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955 (2007). And, so long as those facts set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mirbeau of Geneva Lake, LLC v. City of Lake Geneva*, 746

F. Supp. 2d 1000, 1006 (E.D. Wis. 2010) (emphasis removed) (citing *Ashcroft v. Iqbal*,556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), *Twombly*, 550 U.S. at 555).

3. DISCUSSION

Triad raises two arguments in favor of dismissal of Vi-Jon's fraudulent inducement counterclaim: first, that Wisconsin's Economic Loss Doctrine bars such a claim (Br. in Supp.4–7); second, that Vi-Jon's alleged facts do not establish the elements of a fraudulent inducement claim (Br. in Supp. 7–11). The Court will address those arguments in due course, but first must determine whether Wisconsin law does, in fact, apply to this claim. (*See* Resp. 2, Reply 1–4).

3.1 Applicable Law

The Court must first determine whether Wisconsin law (as opposed to Missouri law—the place of business of Vi-Jon) applies. This is relevant because Wisconsin law applies the economic loss doctrine fairly broadly, barring many types of claims that arise as a result of contracts, *see White v. Marshall*, 693 F. Supp. 2d 873, 878–879 (E.D. Wis.), *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 400, 573 N.W.2d 842 (1998), whereas Missouri recognizes the doctrine only in the product liability context, *Self v. Equilon Enterprises, LLC*, 2005 WL 3763533, *8 (E.D. Mo. Mar. 30, 2005).

The parties' contract states that: "This Purchase Order and the Agreement shall be construed under the laws of the State of Missouri." (Docket #13, Ex. B). Thus, from the face of the contract, it appears that Missouri law should govern this dispute.

Upon further inspection, though, it becomes apparent that the contract's plain language should not be deemed to control the application of law to this tort action. This Court must apply the choice of law rules of

Wisconsin, because Wisconsin is the forum state. *See, e.g.*, *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006), *Taurus IP v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 923 (W.D. Wis. 2007) (noting that, in diversity suits, federal courts apply the choice of law principles of the jurisdiction in which it sits). And under Wisconsin choice of law principles, "[t]ort claims generally fall outside of choice of law provisions" included in contracts. *Taurus IP*, 519 F. Supp. at 923 (citing *CERAbio LLC v. Wright Medical Technology, Inc.*, 410 F.3d 981, 987 (7th Cir. 2005), *Kuehn v. Children's Hospital*, 113 F.3d 1296, 1302 (7th Cir. 1997)). A contractual choice of law provision should not be construed to govern tort disputes unless the language of the provision clearly establishes that the parties so intended. *Taurus IP*, 519 F. Supp. at 923 (citing *Kuehn*, 113 F.3d at 1302).

Given the above-noted precedent, the Court determines that the choice of law provision in the parties' contract should not control the law to be applied to Vi-Jon's fraudulent inducement counterclaim. Fraudulent inducement claims are based in tort and, therefore, the parties' contractual language should control *only if* that language made clear the parties intent for Missouri law to control. *See, e.g.*, *Taurus IP*, 519 F. Supp. at 923–24. The contractual language does not make any reference whatsoever to the application of Missouri law to tort claims arising from the contract and, therefore, the Court must determine that such language does not *clearly* establish the parties intent for Missouri law to apply in such situations.

Accordingly, the Court is not constrained by the terms of the contract to apply Missouri law to Vi-Jon's fraudulent inducement claims. *Id.*

Nonetheless, in the absence of a controlling contractual provision, the Court must look to Wisconsin's choice of law case law to determine which

state's law should apply. Under Wisconsin case law, Wisconsin's law "'should presumptively apply unless it becomes clear that nonforum [in this case, Missouri] contacts are of the greater significance.'" *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis.2d 561, 641 N.W.2d 662 (citing *Hunker v. Royal Indem. Co.,* 57 Wis.2d 588, 599, 204 N.W.2d 897, *Wilcox v. Wilcox,* 26 Wis.2d 617, 634, 133 N.W.2d 408).

In this case, Missouri contacts are of no greater significance—in fact, they are of lesser significance—than Wisconsin contacts, and therefore the presumption in favor of Wisconsin law applies. The only Missouri contact is that Vi-Jon is located in that state. On the other hand, Wisconsin has more numerous and stronger contacts in this case: not only does Triad have its primary place of business in Wisconsin, but the allegedly-contaminated facilities are also located in Wisconsin and—most importantly—the alleged fraudulent misrepresentations occurred at those Wisconsin facilities. (Ans. ¶¶ 1, 61, 66, 68).

As such, the Court applies Wisconsin law to Vi-Jon's fraudulent inducement counterclaim, and accordingly must determine the applicability of the economic loss doctrine to Vi-Jon's counterclaim.

### 3.2   Economic Loss Doctrine

"The economic loss doctrine is 'based on an understanding that contract law and the law of warranty, in particular, is better suited than tort law for dealing with purely economic loss in the commercial arena.'" *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111 ¶ 28, 283 Wis. 2d 555, 699 N.W.2d 205 (internal citations omitted) (quoting *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32 ¶ 26, 270 Wis. 2d 146, 677 N.W.2d 233, *Daanen & Janssen*, 216 Wis. 2d at 403–04, 573 N.W.2d at 846). Its purpose is to further a

number of policies, such as: (1) maintaining the distinction between tort law and commercial law; (2) protecting the freedom of commercial parties to allocate economic risk by contract; and (3) encouraging the purchaser—viewed by the Courts as the party best able to assess the risk of economic loss—to assume, allocate, or insure against such risk. *See, e.g., Insurance Co. of North America v. Cease Electric, Inc.*, 2004 WI 139 ¶ 24, 276 Wis.2d 361, 688 N.W.2d 462, *Van Lare v. Vogt, Inc.*, 2004 WI 110, ¶ 17, 274 Wis. 2d 631, 683 N.W.2d 46, *Daanen*, 216 Wis. 2d at 403, 573 N.W.2d at 846.

On a more practical basis, the economic loss doctrine effectively precludes "'contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship.'" *Van Lare*, 2004 WI 110, at ¶ 19, 274 Wis. 2d 631, 683 N.W.2d 46 (citing *Tietsworth*, 2004 WI 32, at ¶ 23, 270 Wis. 2d 146, 677 N.W.2d 233).

Thus, in this case, if the Court determines that the loss claimed by Vi-Jon under its fraudulent inducement counterclaim is a purely economic loss, then the Court must dismiss that counterclaim. Accordingly, the first line of the Court's inquiry under the economic loss doctrine is to determine whether Vi-Jon's alleged fraudulent inducement loss is purely economic.

The Court determines that such loss is not purely economic and, therefore, allows Vi-Jon to maintain its fraudulent inducement counterclaim. But, the Court also goes further, and concludes that, even if Vi-Jon's alleged loss *were* purely economic, their counterclaim would fall under the "fraud in the inducement" exception to the economic loss doctrine, thus providing another rationale for allowing Vi-Jon to maintain its claim. *See, e.g., Kaloti*, 2005 WI 111, at ¶ 42, 283 Wis. 2d 555, 699 N.W.2s 205, *Digicorp, Inc. v. Ameritech Corp.* 2003 WI 54, 262 Wis. 2d 32, 662 N.W.2d 652; *see also* Ralph C.

Anzivino, *The Fraud in the Inducement Exception to the Economic Loss Doctrine*, 90 MARQ. L. REV. 921 (2007).

### 3.2.1 Economic Loss

There is neither a single, generally-accepted definition of "economic loss," nor an easily-drawn distinction between economic and non-economic losses. *See* Ralph C. Anzivino, *The Economic Loss Doctrine: Distinguishing Economic Loss from Non-Economic Loss*, 91 MARQ. L. REV. 1081, 1093–1117 (2008). The Wisconsin Supreme Court, in *Kaloti*, provided as succinct an explanation of economic as this Court has been able to locate: loss resulting from "a product failing in its intended use…or failing to live up to a contracting party's expectations." *Kaloti*, 2005 WI 111, ¶ 29, 283 Wis. 2d 555, 699 N.W.2d 205 (citing *Daanen & Janssen*, 216 Wis. 2d at 405–06, 573 N.W.2d at 846, *Tietsworth*, 2004 WI 32, at ¶ 24, 270 Wis. 2d 146, 677 N.W.2d 233).

Under that definition, the losses claimed by Vi-Jon under its fraudulent inducement counterclaim are not mere economic loss. Here, Vi-Jon is not complaining that the end product manufactured by Triad was defective or insufficient—in fact, *the end product was simply never completed.* Rather, Vi-Jon seeks damages stemming from the fact that, due to Triad's alleged fraudulent misrepresentations, Vi-Jon allegedly had to repurchase raw material and packaging materials on the open market, after being unable to secure the return of similar materials that they had provided to Triad under the parties' contract. (Am. Answer ¶¶ 112, 114–15, 119–20, 140–148; Resp. 4). While those damages certainly are related to—in fact, distinctly interwoven into the fabric of—the parties' contract, they do not result from the failure of an end product and, therefore, are not purely economic loss under Wisconsin law.

Page 8 of 15

Case 2:11-cv-00766-JPS   Filed 05/04/12   Page 8 of 15   Document 28

### 3.2.2 Fraud in the Inducement Exception

Nonetheless, even if the Court were to determine that Vi-Jon's loss was purely economic, the Court would not be obliged to dismiss that claim, because it falls under the "fraud in the inducement" exception to the economic loss doctrine. *See, e.g.*, *Kaloti*, 2005 WI 111, at ¶ 42, 283 Wis. 2d 555, 699 N.W.2s 205, *Digicorp*, 2003 WI 54, 262 Wis. 2d 32, 662 N.W.2d 652.

The fraud in the inducement exception applies to economic losses when: (1) the claimant can establish the five elements of a fraudulent misrepresentation; (2) the fraudulent misrepresentation occurred before the contract was formed; and (3) the fraudulent misrepresentation was "extraneous" to the contract. *Kaloti*, 2005 WI 111, at ¶ 42, 283 Wis. 2d 555, 699 N.W.2d 205 (citing *Digicorp*, 2003 WI 54, at ¶ 47, 262 Wis. 2d 32, 662 N.W.2d 652).

#### 3.2.2.1 Elements of Fraudulent Misrepresentation

There are five elements of fraudulent misrepresentation, and Vi-Jon has alleged facts sufficient to establish each of those elements.

First, Vi-Jon must show (or at this stage of the litigation, allege) that Triad made a factual representation to the claimant. *Kaloti*, 2005 WI 111, at ¶¶ 12, 30, 42, 283 Wis. 2d 555, 699 N.W.2d 205. Vi-Jon has done so here, alleging that Triad made assurances regarding compliance in December of 2010. (*See, e.g.*, Am. Ans. ¶¶ 131, 141–42). Second, Vi-Jon must allege that those representations were untrue. *Kaloti*, 2005 WI 111, at ¶¶ 12, 30, 42, 283 Wis. 2d 555, 699 N.W.2d 205. Vi-Jon appropriately pleaded this element, as well. (*See, e.g.*, Am. Ans. ¶¶ 141–42). Third, Vi-Jon must allege that Triad made its assurances with knowledge of or reckless disregard for its untruth. *Kaloti*, 2005 WI 111, at ¶¶ 12, 30, 42, 283 Wis. 2d 555, 699 N.W.2d 205. Again,

Vi-Jon alleged this element, stating that "Triad knew the assurances…were false." (Am. Ans. ¶ 141). Fourth, Vi-Jon must allege that Triad made any challenged representations with the intent to defraud or induce action. *Kaloti*, 2005 WI 111, at ¶¶ 12, 30, 42, 283 Wis. 2d 555, 699 N.W.2d 205. Vi-Jon has done so, alleging that Triad made its representations with the intent of inducing reliance. (Am. Ans. ¶ 143). And, finally, Vi-Jon must allege that it believed the representation was true and relied on that representation to its detriment. *Kaloti*, 2005 WI 111, at ¶¶ 12, 30, 42, 283 Wis. 2d 555, 699 N.W.2d 205. Yet again, Vi-Jon properly alleged this element, stating that Triad's representations were material to Vi-Jon's continued ordering of Triad's products. (Am. Ans. ¶¶ 144–45).

Having found that Vi-Jon appropriately pleaded all five elements of its fraudulent misrepresentation claim, the Court next turns to Triad's argument that it did not have a duty to disclose the FDA investigations to Vi-Jon. In *Kaloti*, the court stated that a duty to disclose information arises only when: (1) the fact is material to the transaction; (2) the disclosing party knows that the relying party is unaware of the fact; (3) the disclosing party has peculiar and exclusive knowledge of the fact; and (4) given the objective circumstances, the relying party would reasonably expect disclosure of the fact. *Kaloti*, 2005 WI 111, at ¶ 20, 283 Wis. 2d 555, 699 N.W.2d 205. Triad argues that Vi-Jon has only alleged facts sufficient to satisfy the third of these requirements. (Reply 10).

The Court disagrees—Vi-Jon has alleged facts establishing each of those four requirements. First, the FDA investigation was material to the parties' transaction. Vi-Jon contracts with Triad for health-related products (*see* Am. Ans. ¶ 65)—thus, on the basis of reputation alone, a contamination

Page 10 of 15

Case 2:11-cv-00766-JPS   Filed 05/04/12   Page 10 of 15   Document 28

in the production facilities of Vi-Jon's product would be material to Vi-Jon's continued ability to market that product. Further, because some of Vi-Jon's provided materials were seized by the U.S. Marshal (Am. Ans. ¶ 114), the production of Vi-Jon's product was at least made more difficult. The FDA investigation and seizure was certainly material to the parties' contract.

Second, according to the pleadings, Triad must have known that Vi-Jon did not know about the FDA inspection. According to the pleadings, such inspection was not made public until the recalls of Triad's products began. (Am. Ans. ¶ 88). Unless Triad assumed that Vi-Jon had "underground" methods of receiving information (which this Court will not do), there would have been no way for Vi-Jon to know that the FDA was concerned about Triad's manufacturing practices—let alone that a seizure was imminent. Triad would have known that Vi-Jon could not have been aware. As such, the Court finds that the second requirement is satisfied.

Third, according to the allegations, the FDA investigation was not public knowledge, but was known by Triad prior to the time such investigation became public (Am. Ans. ¶¶ 72, 88)—making it clear that Triad had peculiar and exclusive knowledge of the fact, and satisfying the third requirement to find that Triad had a duty to disclose.

Finally, fourth, the Court finds that Vi-Jon would have reasonably expected disclosure of the FDA investigation. As noted above, the investigation was material to the parties' contract, as it was distinctly interrelated with Vi-Jon's reputation and ability to have products completed on its necessary timetable. Especially in the supply-and-demand health product business, both reputation and timing are extremely important. Any disruption of either could cause drastic down-the-line effects to a business.

So, undoubtedly, it would be reasonable for Vi-Jon to have expected disclosure of the FDA investigation.

Having found all four requirements satisfied, the Court determines that, at least under the pleadings, Vi-Jon has established that Triad owed it a duty to disclose the FDA investigation. Having also adequately pleaded the five elements of a fraudulent misrepresentation claim, Vi-Jon should be allowed to proceed with its claims.

### 3.2.2.2 Misrepresentation Before Contract Formation

Having shown the five elements of fraudulent misrepresentation, Vi-Jon must next establish that the alleged misrepresentation occurred prior to the formation of the disputed contract, if the fraud in the inducement exception is to apply. *Kaloti*, 2005 WI 111, at ¶ 42, 283 Wis. 2d 555, 699 N.W.2d 205.

Vi-Jon has done so here. In its amended answer, Vi-Jon alleges that the misrepresentations occurred in December 2010, causing Vi-Jon to place purchase orders in 2010 and 2011. (Am. Ans. ¶¶ 141–42, 145). Standing alone, those factual allegations certainly satisfy the requirement that the misrepresentation occur before contract formation. At this stage of the case, the Court must accept all well-pleaded facts as true; and, doing so, the Court must accept Vi-Jon's allegation that the December 2010 misrepresentations preceded (at least some) of their 2010 and 2011 purchase orders.

Of course, as this case proceeds further into the discovery phase, it may become clear that Vi-Jon could not have relied on those alleged misrepresentations in making its purchase orders. But, that is a question for the summary judgment stage—not at the Court's evaluation of a motion to dismiss.

### 3.2.2.3 Extraneous Fraud

Finally, for this claim to fall under the fraud in the inducement exception to the economic loss doctrine, the alleged misrepresentation must have been "extraneous" to the contract. *Kaloti*, 2005 WI 111, at ¶ 42, 283 Wis. 2d 555, 699 N.W.2d 205. A misrepresentation is extraneous to a contract when "the fraud concerns matters whose risk and responsibility did not relate to the quality or the characteristics of the goods for which the parties contracted or otherwise involved performance of the contract." *Id.* (citing *Digicorp*, 2003 WI 54, at ¶ 47, 262 Wis. 2d 32, 662 N.W.2d 652, *Huron Tool & Eng'g Co. v. Precision Consulting Services, Inc.*, 209 Mich. App. 365, 372, 532 N.W.2d 541, 545 (1995), *Raytheon Co. v. McGraw-Edison Co., Inc.*, 979 F. Supp. 858, 872 (E.D. Wis. 1997)). For example, in *Kaloti*, the court determined that the alleged misrepresentations concerned the performance of the contract, as opposed to the quality of the goods contracted for, which the court stated was a risk that the parties "never contemplated to be a part of the contract to purchase Kellogg's products." *Kaloti*, 2005 WI 111, at ¶ 45, 283 Wis. 2d 555, 699 N.W.2d 205.

The alleged situation in this case is very similar to that in *Kaloti* and, therefore, the Court will not dismiss Vi-Jon's counterclaim. Here, Vi-Jon takes issue with Triad's failure to complete the ordered products, due to contamination issues in the Triad factory. In the Court's eyes, Vi-Jon's cross-complaint is closely related to Triad's performance on the contract. With the FDA's seizure of Triad's products, it became impossible for Triad to perform on the contract by completing the ordered products. Thus, Vi-Jon's complaint does not relate to the quality of completed products, but rather to Triad's inability to perform on the parties' contract.

As such, under *Kaloti*, it is clear that the alleged misrepresentation was "extraneous" to the parties' contract, and Vi-Jon's misrepresentation claim falls under the fraud in the inducement exception to the economic loss doctrine. *Kaloti*, 2005 WI 111, at ¶ 45, 283 Wis. 2d 555, 699 N.W.2d 205.

### 3.3 Failure to Establish Fraudulent Misrepresentation

Triad's final argument is that Vi-Jon's amended answer fails to plead facts sufficient to establish its fraudulent misrepresentation claim. (Reply 9–11). The Court addressed the majority of this argument in Section 3.2.2.1, *supra*. As discussed above, based on the pleadings, the Court has determined: (1) that Vi-Jon alleged sufficient facts to establish that the fraudulent statement occurred prior to Vi-Jon's entering purchase orders; (2) that Vi-Jon relied upon Triad's assurances in entering those purchase orders; and (3) that Triad had a duty to disclose the FDA investigation to Vi-Jon. Again, the Court notes that it bases its determination on the state of the pleadings—certainly, as discovery proceeds additional facts may become apparent that change the Court's analysis (for example, facts that establish that Vi-Jon entered into purchase orders prior to any alleged misrepresentations). But, accepting the well-pleaded facts as true, as it must at this stage of the proceedings, the Court finds that Vi-Jon has properly pleaded the elements of fraudulent misrepresentation. It now delves slightly deeper into Triad's argument, nonetheless finding that dismissal of Vi-Jon's counterclaim would be inappropriate.

### 4. CONCLUSION

Having found that Vi-Jon's fraudulent inducement claim is not barred by the economic loss doctrine and is also well-pleaded the Court is obliged to deny Triad's motion to dismiss. (Docket #24).

Accordingly,

IT IS ORDERED that the plaintiff's motion to dismiss the defendant's counterclaim for fraudulent inducement to contract (Docket #24) be and the same is hereby DENIED.

Dated at Milwaukee, Wisconsin, this 4th day of May, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge